UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TAVORUS FLUKER, | : | |
| Petitioner, | : | |
| | : | |
| v. | : | No. 3:16-cv-82 (SRU) |
| | : | |
| WARDEN H. FALCONE, | : | |
| Respondent. | : | |

**RULING ON PETITION FOR WRIT OF HABEAS CORPUS**

Tavorus Fluker ("Fluker"), an inmate currently confined at Garner Correctional

Institution in Newtown, Connecticut, brings this action *pro se* seeking a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. He challenges his 2008 Connecticut convictions for attempted

murder, assault and criminal possession of a firearm. For the reasons that follow, the petition is

denied.

I.      **Standard of Review**

A federal court will entertain a petition for writ of habeas corpus challenging a state court

conviction only if the petitioner claims that his custody violates the Constitution or federal laws.

*See* 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is

not cognizable in the federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings

and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559

U.S. 766, 773 (2010) (citations and internal quotation marks omitted). A federal court cannot

grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any

claim that was rejected on the merits by the state court unless the adjudication of the claim in

state court either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  That is a very difficult standard to meet.  *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013).

Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006).  Thus, "[c]ircuit precedent does not constitute "'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)).  The law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context.  *See Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle.  *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008), *cert. denied*, 555 U.S. 1176 (2009).  It is not enough that the state court decision is incorrect or erroneous.  Rather, the state court application of clearly established law must be objectively unreasonable, which is a substantially higher standard.  *See Schriro v. Landrigan*, 550 U.S. 465,

473 (2007).  Thus, a state prisoner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 15 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction").

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet).  In addition, the federal court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *See Id.*

## II.    **Procedural History**

On July 11, 2007, Groton Police Detectives Robert Emery and Kevin Curtis executed a warrant for the arrest of Fluker on charges of attempt to commit murder, criminal use of a firearm, criminal possession of a firearm and unlawful discharge of a firearm.  *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. B at 9-12, ECF No. 15-2.  On July 12, 2007, a judge of the Connecticut Superior Court for the Judicial District of New London arraigned Fluker, read him his rights and set bond at one million dollars.  *See id.* at 9.  On August 6, 2007, Fluker pleaded not guilty to all four counts.  *See id.* at 6, 8.  On July 1, 2008, Michael Regan, State's Attorney for the New London Judicial District, filed a substitute information charging Fluker with one count of

criminal attempt to commit murder in violation of Connecticut General Statutes § 53a-49 and 53a-54a, one count of assault in the first degree in violation of Connecticut General Statutes § 53a-59(a)(5), and one count of criminal possession of a firearm in violation of Connecticut General Statutes § 53a-217(a).  *See id.* at 13.  Fluker pleaded not guilty to all three counts of the substitute information.  *See id.*

A jury trial began on July 25, 2008.  *See id.* at 4.  On August 15, 2008, the jury found Fluker guilty of all three counts.  *See* id. at 5.  On October 17, 2008, a judge sentenced Fluker to a total effective sentence of twenty-five years of imprisonment.  *See id.* at 4-5, 19.

Fluker appealed his convictions on two grounds.  *See State v. Fluker*, 123 Conn. App. 355, 357 (2010).  He claimed that the state violated the Fifth Amendment's prohibition against presenting evidence of post-Miranda silence at trial and the prosecutor had engaged in prosecutorial misconduct by failing to follow a court order regarding the admissibility of evidence involving the efforts of police to locate him.  *See id.*  On August 24, 2010, the Connecticut Appellate Court affirmed the judgment of conviction.  *See id*. at 372.  On October 14, 2010, the Connecticut Supreme Court denied the petition for certification to appeal from the decision of the Connecticut Appellate Court.  *See State v. Fluker*, 298 Conn. 931 (2010).

On May 9, 2011, Fluker filed a petition for writ of habeas corpus in the Connecticut Superior Court for the Judicial District of Tolland at Rockville challenging his conviction.  *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. H, ECF No. 15-8.  On February 25, 2013, a superior court judge granted Fluker leave to file a second amended petition.  *See id.*, Dkt. Entry 113.00, 114.00 & App. J.  Fluker asserted claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct and actual innocence.  *See id*., App. J.

4

Fluker and other witnesses participated in a trial on the claims in the second amended

petition on October 16, 2013 and April 25, 2014. *See Fluker v. Warden, State Prison*, No. CV11-

4004147-S, 2014 WL 4290611, at *2 (Conn. Super. Ct. July 18, 2014). On July 16, 2014, a judge

denied the petition. *See id.* at *8.

Fluker appealed the denial of the second amended petition. On October 27, 2015, the

Connecticut Appellate Court dismissed the appeal of the decision denying the amended habeas

petition. *See Fluker v. Comm'r of Correction*, 160 Conn. App. 908 (2015) (per curiam). On

December 9, 2015, the Connecticut Supreme Court denied the petition for certification to appeal

the decision of the appellate court. *See Fluker v. Comm'r of Correction*, 320 Conn. 905 (2015).

Fluker filed his federal habeas petition in January 2016. The respondent has filed a

memorandum in opposition to the petition.

## III.   Factual Background

The Connecticut Appellate Court determined that the jury reasonably could have found

the following facts and procedural history:

> On the evening of February 9, 2007, the victim, Lewis Camby III,
> went to Sully's Cafe', a tavern in Groton. Shortly after arriving, he
> encountered [Fluker]. After exchanging greetings, [Fluker] asked
> the victim, "what's up with that $300 that you owe Danette
> [Robinson]."[2] After a brief discussion, the two men decided that
> neither of them wanted to make an issue over the debt owed to
> Robinson. Subsequent to this conversation, the victim continued
> socializing within the bar and observed [Fluker] leave through a
> door located in the poolroom. Upset that [Fluker] had interfered in
> his personal business, the victim called Robinson to ask why
> [Fluker] was inquiring about the money that he owed her. A short
> time later, the victim encountered [Fluker] again. This time,
> [Fluker] appeared in the poolroom near a door, which exited into
> the parking lot. During this encounter, after motioning to the victim
> to come over to where he was standing, [Fluker] grabbed his arm,
> put a pistol under his chin and said, "I kill [people] like you." Both
> men then proceeded toward the door in the poolroom which led into

the parking lot. As [Fluker] exited, the victim remained close to the doorway, and the two men began to argue about the recent altercation. At this point, [Fluker] raised his arm and shot the victim in the chest with a large caliber automatic weapon.

Soon after the shooting, officers from the Groton town police department were dispatched to Sully's Cafe'. Upon arriving, Sergeant Jeffrey Scribner entered the tavern and observed the victim being held up by two patrons leaning against the bar. Scribner noticed "a bloody hole in the upper left chest area and in the clothing" of the victim where he had been shot. Despite being very emotional, the victim was alert enough to inform Scribner that he had been shot by "Tavorus." When Scribner investigated further concerning the identity of the shooter, the victim told him that Tavorus was "Lamar's brother." Being familiar with Tavorus and Lamar, Scribner concluded that [Tavorus Fluker] was the shooter. Police began a canvass of the crime scene and found a .45 caliber shell casing in the parking lot immediately outside a side door of the bar that led to the poolroom.

Shortly afterward, medical personnel arrived, stabilized the victim and transported him to William W. Backus Hospital. Officer Christopher Hoffman of the Groton town police department accompanied the victim in the ambulance and stayed with him at the hospital until he was flown by Life Star helicopter to Hartford Hospital. While waiting to be transported, the victim, once again, identified [Fluker] as the person who had shot him. The victim told Hoffman that [Fluker] shot him over an outstanding debt that he owed to a mutual friend. Following the victim's identification of [Fluker] as the person who had shot him, the police began looking for [Fluker].

The next morning, [Fluker] left Connecticut and drove to Philadelphia, Pennsylvania. He eventually went to Arkansas. At no time following the shooting did [Fluker] tell anyone he was leaving town or where he was going. That same morning, a warrant was issued for the arrest of [Fluker] in connection with the shooting. As part of their investigation, police contacted other area police departments and the United States Marshals Service for assistance in locating [Fluker]. Police also informed the New London Day newspaper (Day) that a warrant had been issued. Subsequently, the Day published an article concerning [Fluker] and the shooting.

[Fluker] was arrested in Arkansas on July 11, 2008.[1] He then was transported to Newburgh, New York, by the United States Marshals Service and taken into custody by Detectives Robert Emery and Kevin Curtis of the Groton town police department. Once [Fluker] was secured in the transport vehicle, Curtis advised him of his *Miranda* rights. Subsequently, Emery asked [Fluker] "if he wanted to talk about the case." Emery testified that "[Fluker] just declined. He said he didn't want to talk about it, and I said okay. And he said he's got five witnesses that will say he didn't do it or wasn't involved." After Emery asked [Fluker] to supply the names of his alibi witnesses, the defendant responded, "no, that's all right."

*Fluker*, 123 Conn. App. 355, 357–60 (2010) (footnotes omitted).

## IV. Discussion

There are three grounds in the present petition. Fluker asserts that: (1) the State of Connecticut erred in presenting evidence of his post-*Miranda* silence in violation of the Fifth Amendment; (2) trial counsel was ineffective in failing to: (a) investigate the incident and/or evidence produced at trial, (b) interview witnesses, and (c) request that the judge hold a hearing to determine whether a witness's invocation of his Fifth Amendment right not to testify was valid; and (3) the prosecutor had engaged in misconduct by threatening to prosecute a potential defense witness if he testified at trial.

### A. Miranda Claim

Fluker alleges that after his arrest, Groton Police Detectives Emery and Curtis transported him back to the Groton Police Department. During the ride back to the station, Detective Curtis advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). When

_____

[1] Fluker's Superior Court criminal case file reflects that officers arrested Fluker on July 11, 2007, not July 11, 2008. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. B at 10, 12 (Arrest Warrant Returns dated July 11, 2007), ECF No. 15-2. The State's Attorney filed a substitute information on July 1, 2008, and Fluker pleaded not guilty to the substitute information on that same date. *See id.*, 4, 7, 13 (Docket Entries and Substitute Information). Thus, the reference by the Connecticut Appellate Court regarding the date of Fluker's arrest on July 11,

Detective Emery subsequently asked him about the case, Fluker declined to talk about it.  Fluker

then made a statement about witnesses who would testify to his lack of involvement in the crime.

When Detective Emery asked Fluker to name the witnesses, Fluker declined to name them.   At

trial, the prosecutor called Detective Emery to testify and elicited testimony regarding the

statements made by Fluker just after his arrest.  In addition, the prosecutor made reference to

Fluker's statement about unidentified alibi witnesses in his closing statement.  Fluker contends

that the prosecutor erred in presenting evidence of his post-*Miranda* silence in violation of *Doyle*

*v. Ohio*, 426 U.S. 610 (1976).

The Connecticut Appellate Court found the following additional facts were relevant to its

review Fluker's Fifth Amendment claim.

> On direct examination, Emery described the events that transpired after [Fluker]
> was taken into custody and advised of his right to remain silent. The following
> exchange between Michael L. Regan, the state's attorney, and Emery occurred at
> trial:
>
> "Q. And after he was advised of his rights, was [Fluker] asked any questions?
> "A. I asked if he wanted to talk about the case.
> "Q. And what did he say?
> "A. He just declined. He said he didn't want to talk about it, and I said okay. And
> he said he's got five witnesses that will say he didn't do it or wasn't involved.
> "Q. And what did you do when he said he had five witnesses that said that he
> wasn't involved?
> "A. I asked him for the names of the witnesses so I could talk to them.
> "Q. And what did he say?
> "A. He said no, that's all right."
>
> [Fluker] did not object to this exchange. During cross-examination, defense
> counsel furthered this line of questioning by asking Emery whether [Fluker] ever
> told him that he would give the names of his alleged alibi witnesses to his attorney.
> Emery testified, "No, I don't recall [whether] he said that." During closing
> argument to the jury, the prosecutor recounted [Fluker's] testimony at trial, stating,
> "[a]lso, you remember [that Fluker] testified [that] when he turned himself in that
> he had [those alibi] witnesses, but he never gave the police the names of [those]

2008, appears to be a typographical error.

witnesses."

*Fluker*, 123 Conn. App. at 361–62 (citations omitted).

The Fifth Amendment to the United States Constitution provides in relevant part: "No person shall be ... compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law...." U.S. Const. Amend. V. It is applicable to state criminal proceedings by virtue of the Fourteenth Amendment. *See Malloy v. Hogan*, 378 U.S. 1, 6 (1964). In *Miranda*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. The Court stated that prior to questioning an individual during a custodial interrogation, law enforcement officers must inform the individual:

> that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* at 479. When an individual knowingly and voluntarily waives his *Miranda* rights, "law enforcement officials may continue questioning until and unless the suspect clearly requests an attorney." *Davis v. United States*, 512 U.S. 452, 461 (1994).

In *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976), the Supreme Court held that "it would be fundamentally unfair and a deprivation of due process" to permit a defendant's silence after being advised of his *Miranda* rights to be used for impeachment purposes at trial. In *Anderson v. Charles*, 447 U.S. 404 (1980), the Supreme Court further explained that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements ... [as][s]uch questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving

*Miranda* warnings has not been induced to remain silent." *Id.* at 408. When a defendant voluntarily speaks, then, the Court held, the "defendant has not remained silent at all." *Id.*

In this case, Fluker challenges questions posed by the prosecutor and the answers elicited by those questions on direct examination of Detective Emery, who questioned Fluker after he had been read his *Miranda* rights. Fluker did not object to the questions or the testimony at trial. *See Fluker*, 123 Conn. App. at 361. Because the claim was unpreserved, the Connecticut Appellate Court analyzed the claim under *State v. Golding*, 213 Conn. 233, 362 (1989). Under the standard set forth in *Golding*, a defendant may raise an unpreserved claim on appeal if four conditions are met.[2]

The Appellate Court determined that Fluker's claim met the first two conditions under *Golding*. *See id.* at 363, 1 A.3d at 1221. In addressing the third prong of the *Golding* standard, whether the claim involved a violation of a constitutional right and had resulted in the deprivation of the defendant's right to a fair trial, the Appellate Court relied on the Supreme Court's decisions in both *Miranda* and *Doyle*. *See id.*, at 364-65. Because the Appellate Court applied the correct legal principles, the decision is not contrary to federal law. Thus, the issue is whether the analysis of the Appellate Court was an unreasonable application of Supreme Court Law.

The Appellate Court noted that it must first determine whether Fluker had invoked his right to remain silent at the time he responded to questions posed by Detective Emery. A defendant seeking to invoke his right to remain silent under the Fifth Amendment during an

---

[2] The four conditions are: (1) the record of the trial court is sufficient to review the claimed error; (2) the claim asserts a violation of a fundamental right and is of constitutional magnitude; (3) it is clear that a violation of the constitution exists and the violation resulted in a deprivation of the defendant's right to a fair trial; and (4) if the claim is subject to a harmless error review, the state neglected to show harmlessness of the alleged violation of the defendant's constitutional rights beyond a reasonable doubt. *See id.* at 239-40.

interrogation after having been taken into custody must do so unambiguously.  *See Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010).  Thus, the invocation must be done "through a clear, unambiguous affirmative action or statement."  *United States v. Plugh,* 648 F.3d 118, 124 (2d Cir. 2011).  "A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry." *Thompkins,* 560 U.S. at 381.   If a suspect offers no statement or offers a statement regarding his or her right to remain silent that is ambiguous or equivocal, the police need not stop interrogating the suspect and are not required to pose questions to clarify whether the suspect wants to invoke his or her *Miranda* rights." *Id.* at 389.

Furthermore, a waiver of a defendant's right to remain silent need not be an express waiver.  A waiver may be implied through "the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver."  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

In considering the circumstances surrounding the statements made by Fluker, the Appellate Court observed that Fluker had followed his verbal statement that he did not want to talk about the case with a statement about witnesses who might provide him with an alibi and insulate him from liability for the crimes with which he had been charged.  Thus, the Court concluded that Fluker had not unambiguously invoked his right to remain silent at the time he responded to the questions asked by Detective Emery.  "Despite telling Emery that he was not going to discuss the case . . . [Fluker's] statements immediately following receipt of his *Miranda* warnings clearly indicated that he was not invoking his [F]ifth [A]mendment right to remain silent." *See Fluker*, 123 Conn. App. at 368.

Absent a clear invocation of his right to remain silent, Detective Emery was then permitted to ask a further question regarding the identities of those alibi witnesses and it was

permissible for the State's Attorney to offer testimony regarding Fluker's statements at trial without violating *Miranda* or *Doyle*. *See Bradley v. Meachum*, 918 F.3d 338, 343 (2d Cir. 1990) ("Bradley cannot be said to have invoked his [F]ifth [A]mendment right regarding his willingness to discuss his involvement in the crime because in the same breath, he denied any involvement. Accordingly, we hold that any reference at trial to Bradley's statement that he would not discuss whether he was involved in the robbery was permissible, because the statement was not the functional equivalent of silence under the [F]ifth [A]mendment."). Because Fluker had not unambiguously invoked his right to remain silent, the Appellate Court determined that the prohibition set forth in *Doyle* was not applicable to the questions asked and testimony given by Detective Emery on direct examination at trial or the reference made by the prosecutor in his closing statement to Fluker's statement to Detective Emery regarding alibi or exculpatory witnesses. *See id.* at 366-68. I conclude that the Appellate Court's decision was not an unreasonable application of Supreme Court law to the facts underlying Fluker's *Miranda* claim. Accordingly, the petition for writ of habeas corpus is denied with respect to the first ground for relief.

### B.      Ineffective Assistance of Trial Counsel

In his second ground for relief, Fluker argues that the state habeas judge erred in concluding that trial counsel's performance was either not deficient or that any conduct by counsel did not prejudice the outcome of the trial. The respondent argues that the habeas judge correctly determined that Fluker's ineffective assistance of trial counsel claim did not meet the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland*. To prevail, a petitioner must demonstrate, first, that counsel's conduct "fell below an

12

objective standard of reasonableness" established by "prevailing professional norms," and, second, that counsel's deficient performance caused prejudice to him. *Id.* at 687-88.

To satisfy the performance prong of the *Strickland* test, a petitioner must show that counsel's assistance was not "reasonable under the circumstances." *Strickland*, 466 U.S. at 688. Because in hindsight it is "tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," *id.,* at 689, a court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. Judicial scrutiny of counsel's performance must, therefore, be highly deferential. *Id*.

To satisfy the prejudice prong of the *Strickland* test, a petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005). A petitioner must demonstrate both deficient performance and sufficient prejudice to prevail on a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong. *See id.* at 697, 700.

A federal court will consider the last reasoned state court decision to determine whether the denial of the effective assistance of trial counsel claim is an unreasonable application of federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the relevant decision was issued by the Connecticut Superior Court which denied the second amended petition for writ of

habeas corpus. In analyzing Fluker's ineffective assistance of counsel claims, the Connecticut Superior Court judge applied the standard established in *Strickland*. Because the state court judge applied the correct legal standard, the state court decision cannot trigger the "contrary to" prong of section 2254(d)(1).

Fluker argues that trial counsel was ineffective in three ways. He contends that counsel (1) failed to investigate the incident or evidence produced at trial; (2) did not interview defense witnesses in preparation for trial; and (3) was ineffective in failing to request that the court hold a hearing on whether the Fifth Amendment privilege invoked by a witness was valid.

### 1.    Failure to Investigate

Fluker has a right to have counsel perform an adequate investigation. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. He has no right, however, to have counsel pursue every evidentiary lead regardless of whether the lead is likely to reveal evidence beneficial to the defense. Counsel has provided effective assistance if he makes reasonable decisions to investigate or not investigate certain leads. Even an unreasonable decision not to investigate will not rise to the level of ineffective assistance if that decision had no effect on the conviction. *See id.* at 691-92.

As a preliminary matter, Fluker did not raise his claim of trial counsel's failure to investigate the incident (or evidence produced at trial) on appeal to the Connecticut Appellate or Supreme Courts. Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, Apps. N, P. Thus, that claim of ineffective assistance of counsel is not exhausted. Even if Fluker had raised the claim on appeal, however, the Connecticut Superior Court judge addressed the claim and found it was without merit because Fluker did not sufficiently prove that his counsel's performance was below the

14

objective level of reasonableness that the performance prong of *Strickland* requires.

In reviewing the failure to investigate claim, the judge noted that if was a general claim that did not include facts to explain or support it.   Because Fluker had not identified the specific acts or omissions of trial counsel related to his attorney's failure to investigate, there was insufficient evidence to conclude that counsel's performance fell below the objective level of reasonableness.  *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at *4.  Thus, the claim of failure to investigate did not meet the performance prong of the *Strickland* standard. Furthermore, Fluker presented no evidence at the habeas trial to show that there was a reasonable probability that the outcome of the trial would have been different absent counsel's alleged failure to investigate the incident [or evidence produced at trial].  Because Fluker did not show that his counsel's performance was objectively unreasonable, nor that he was prejudiced by it, the court concludes that the Superior Court judge's determination was not an unreasonable application of Supreme Court law.  The petition is denied with respect to the first claim of ineffective assistance of trial counsel.

### 2.  Failure to Interview Witnesses

The Second Circuit has held that a decision about whether to call a witness to testify is usually a matter of trial strategy.  *See Bierenbaum v. Graham*, 607 F.3d 36, 55 (2d Cir. 2010) (citation omitted).   Thus, counsel's determination "whether to call specific witnesses–- even ones that might offer exculpatory evidence–- is ordinarily not viewed as a lapse in professional representation."  *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) (citations omitted).

Fluker claims that trial counsel failed to interview twelve witnesses prior to the criminal

trial.[3]  At the habeas trial, the court heard testimony from six witnesses, Eric Kunze, Derrick R. Helme, Daniel B. Wilson, Larry W. Sabotta, Lavondi Carter and Paul Winston.  The judge carefully reviewed the testimony of each of the six potential witnesses who were not interviewed by counsel.  *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at \*4-5.

The habeas court noted that Fluker claimed that the testimony of those witnesses would have refuted the allegations that he had been involved in a confrontation with the victim near the bar before the shooting, and would have shown that he was still at the bar at the time of the shooting.  *See id.* at \*5.  The court noted that one witness, Officer Kunze, was called to testify at trial and did testify.  *See id.*, at \*4; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. S, Trial Tr. 36-43, Aug. 7, 2008, ECF No. 15-25.  Two witnesses, Sabotta and Wilson, were not interviewed by counsel, but testified at the habeas trial that they did not know the victim or Fluker on the night in question and could not confirm or deny whether the victim or Fluker was at the bar.  *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at \*5; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. T, Habeas Trial Tr. 67-79, Oct. 16, 2013, ECF No. 15-33.  Two witnesses, Carter and Winston, were not interviewed by counsel but offered testimony that was in direct conflict with Fluker's testimony that he was at the bar for a period of time on the night in question.  *See id.* at \*5; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. T, Habeas Trial Tr. 10-20; 82-91, Oct. 16, 2013, ECF No. 15-33.

---

[3] Those twelve witnesses were identified in Fluker's second amended habeas petition as: Eric Kunze, Derrick R. Helme, Daniel B. Wilson, Larry W. Sabotta, Lavondi Carter, Paul Wilson/Winston, Otis Grady, Elijah Fluker, John E. Hughley, Savonne K. Mitchell, Ricco Stute and Jacab Pluoff.  *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. J, Second Amended Petition at 3.  Paul Wilson was later identified as Paul Winston during his testimony at the habeas trial.  *See id.* at App. T, Habeas Trial Tr. at 10 Oct. 16, 2013, ECF No. 15-33.

The state habeas judge's factual findings and credibility determinations are "presumed to be correct," and Fluker has the "burden of rebutting [that] presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, in reviewing a claim of ineffective assistance of counsel, I am not permitted to reassess the state habeas judge's credibility determinations of witnesses, because I have not heard the testimony or observed the demeanor of those witnesses. *See Shabazz v. Artuz*, 336 F.3d 154, 163 (2d Cir. 2003) ("Credibility determinations are properly within the province of the state court that presided over the trial and evidentiary hearing."); *Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (presumption of correctness regarding the factual findings by the trial judge under 28 U.S.C. § 2254(e)(1) is "particularly important when reviewing the trial court's assessment of witness credibility"). Fluker has offered no evidence to rebut the habeas judge's factual or credibility determinations.

With regard to counsel's alleged failure to interview witnesses Kunze, Wilson, Sabotta, Carter and Winston, the judge concluded that, in view of the compelling testimony of the victim from the criminal trial, there was no reasonable probability that the testimony of any of those witnesses identified by Fluker at the habeas trial would have resulted in a more favorable outcome for Fluker. *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at *5. Thus, the judge determined that Fluker had not met the prejudice prong of the *Strickland* standard with respect to the claim that counsel failed to interview five witnesses who testified at the habeas trial, but did not testify at the criminal trial.

With regard to the sixth witness, Derrick Helme, who also testified at the habeas hearing, the state habeas judge observed that counsel had in fact interviewed him on multiple occasions

17

prior to the criminal trial and that counsel called him to testify at trial, but he invoked his Fifth Amendment right not to do so and did not testify. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. T, Habeas Trial Tr. 47:5-27, 50:2-16; 52:18-26, Oct. 16, 2013, ECF No. 15-33. Thus, the superior court judge concluded that Fluker's contention that counsel's performance was deficient because she failed to interview Helme before trial was without merit. *See id.* at *6. The judge reasonably applied federal law in concluding that the claim that counsel neglected to interview Helme prior to trial did not meet the performance prong of *Strickland*.

At the habeas trial, Fluker did not call the other six witnesses, Otis Grady, Elijah Fluker, John E. Hughley, Savonne K. Mitchell, Ricco Stute and Jacab Pluoff, whom he claimed counsel had neglected to interview prior to the criminal trial. Nor did he offer any evidence about the nature of any testimony the six witnesses would have given or how any such testimony would have impacted the outcome of the trial. Absent any evidence that the six witnesses would have been available to testify at trial or that their testimony would have relevant or admissible, the habeas judge held he could not conclude that counsel's performance was deficient or that any failure to interview these six witnesses would have prejudiced the outcome of the criminal trial. That determination by the habeas judge was a reasonable application of the *Strickland* standards.

For the foregoing reasons the state habeas judge's determinations that the counsel's failure to interview Derrick Helme, Otis Grady, Elijah Fluker, John Hughley, Savonne Mitchell, Ricco Stute and Jacab Pluoff did not constitute deficient performance and that counsel's failure to interview Eric Kunze, Daniel Wilson, Larry Sabotta, Lavondi Carter and Paul Winston was not prejudicial to the outcome of the criminal trial were not unreasonable applications of the performance or prejudice prongs of the *Strickland* standard. Accordingly, the petition is denied

with respect to the second ineffective assistance of counsel claim.

### 3. <u>Failure to Request a Hearing</u>

Fluker claims that the testimony that Helme was going to offer at trial was very important to his defense. He contends that trial counsel erred in failing to ask the trial judge to hold a hearing on the validity of Helme's invocation of his Fifth Amendment right not to testify.

The state habeas judge noted that Fluker's expert witness had suggested that trial counsel could have requested the prosecutor to grant or the trial judge to order the prosecutor to grant Helme immunity from prosecution so that he could testify at trial. *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at *6. The state habeas court determined that, even if counsel's performance was deficient in failing to request a hearing, there was "reasonable likelihood" that Helme's testimony would not have changed the outcome of the trial given the testimony of the other witnesses, including the victim.[4] *See id.* Thus, in reaching that conclusion, the Superior Court considered counsel's alleged error in view of all of the evidence that the parties presented to the judge or jury during the trial. *See Strickland*, 466 U.S. at 696 (determination of whether counsel's ineffectiveness has prejudiced the outcome or result of the criminal trial or proceeding requires a court to "consider the totality of the evidence before the judge or jury"). Even if there was a possibility that Helme's testimony might have affected the outcome of the trial, Fluker did not demonstrate that it would have changed the outcome. *See Harrington v. Richter*, 562 U.S. 86, 112 (2011) ("The likelihood of a different result must be substantial, not just

---

[4] The judge noted in a footnote that although he need not reach or fully analyze the performance component of the claim, he determined that "it was highly unlikely that defense counsel could have been found deficient for not raising the issue" because there was no "truly viable challenge that the [prosecutor's] threat to prosecute Mr. Helme . . . [was] selective or

conceivable.").

The Connecticut Superior judge reasonably decided that the claim of counsel's failure to request a hearing to determine the validity of Helme's invocation of his Fifth Amendment right to decline to testify at the criminal trial did not meet the prejudice prong of the *Strickland*. *See Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."). Accordingly, the petition for writ of habeas corpus is denied with respect to the third claim of ineffective assistance of counsel.

## C. Prosecutorial Misconduct

Fluker claims that the prosecutor engaged in misconduct when, during the trial, he threatened to prosecute a witness, Derrick Helme, who was scheduled to testify on Fluker's behalf. As indicated above, Helme subsequently took the stand, but invoked his Fifth Amendment privilege not to testify. Fluker argues that the prosecutor violated his due process right to a fair trial by preventing him from offering Helme's testimony.

Prosecutorial misconduct only gives rise to a constitutional violation if the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In evaluating a claim of prosecutorial misconduct, the court considers the prosecutor's conduct in the context of the entire trial "to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young*, 470 U.S. 1, 12 (1985). The court must consider how much of the perceived misconduct was invited by the defense, whether the trial court gave any curative jury instructions and the strength of the State's case against the defendant. *Darden,* 477 U.S. at 181-82.

tactical." *Id.* at *6 n.7.

Fluker raised his claim of prosecutorial misconduct in the second amended habeas petition filed in state court. In its review of the claim, the Connecticut Superior Court applied a state case with a holding that mirrored the federal law applicable to prosecutorial misconduct claims. *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at *7. Because the Connecticut Superior Court judge applied the correct legal principles, the decision is not contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (state court need not be aware of nor cite relevant Supreme Court cases as long as the reasoning and decision do not contradict applicable law). Thus, the present issue is whether the analysis of the Connecticut Superior Court judge constituted an unreasonable application of federal law.

As indicated above, the habeas judge heard testimony from Helme during the trial held on October 16, 2013. *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at *6; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. T, Habeas Trial Tr. 21-44, Oct. 16, 2013, ECF No. 15-33. In addition, the judge heard testimony from Fluker's expert witness, Attorney Jeffrey Kastenband. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. T, Habeas Trial Tr. 3-37, Apr. 25, 2014, ECF No. 15-34.

The habeas judge observed that the prosecutor's information regarding the possibility that Helme would testify falsely at trial appeared to be credible. *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at *6 n.7 & *7. Though Helme was expected to testify falsely, the prosecutor indicated that a hindering or accessory charge would only be brought against Helme if Fluker was found guilty. *See id.* at *7. The Superior Court found that the purpose of informing Fluker's attorney, counsel for Helme, and the court of the possibility of pursuing a charge against Helme was to avert a perjurious statement by Helme rather than to gain an advantage by forcing Helme

to invoke his Fifth Amendment right not to testify. *See id.* In fact, Fluker's attorney testified that the prosecutor had affirmatively indicated that he would prosecute Helme if he testified falsely. *See* Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. T, Habeas Trial Tr. 50:5-13, Oct. 16, 2013, ECF No. 15-33. The habeas judge noted that "this court can find nothing improper, overreaching or abusive about the state's exercise of its prosecutorial powers nor can it be said that any part of the basis for the threat of prosecution was to provide the state with an advantage at trial." *Fluker*, 2014 WL 4290611 at *7. For those reasons, the judge determined that the actions of the prosecutor did not rise to the level of improper, overreaching or abusive conduct. *Id.*

Nor did the judge find that the testimony Helme stated he would have offered at trial would have changed the outcome of the trial. *See id.* at *6 & n.8. Helme testified that he would not have offered Fluker an alibi for the time of the shooting and Helme's testimony supported rather than refuted the victim's description of the circumstances surrounding his being shot by Fluker. *See id.*; Resp't's Mem. Opp'n Pet. Writ Habeas Corpus, App. T, Habeas Trial Tr. 38:20-27; 39:1-10, Oct. 16, 2013, ECF No. 15-33. Thus, the state habeas judge concluded that the prosecutor had not deprived Fluker of his due process right to a fair trial by threatening to prosecute Helme if he testified falsely at trial. *See Fluker,* No. CV11-4004147-S, 2014 WL 4290611, at *7.

The Connecticut Superior Court did not unreasonably apply United States Supreme Court law in reaching its conclusions that the conduct of the prosecutor was not improper and that the conduct did not affect the outcome of the trial or deprive Fluker of a fair trial. The petition for writ of habeas corpus is denied with respect to this ground.

**V.**     **Conclusion**

The Petition for Writ of Habeas Corpus [**ECF No. 1**] is **DENIED**. The Clerk is directed to enter judgment in favor of the respondent and close this case.

Fluker has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

SO ORDERED at Bridgeport, Connecticut this 14th day of August 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge